**Opinion issued July 14, 2026**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-25-00920-CV

———————————

**PRASLA PROPERTY, INC., NAVROZ K. PRASLA, MEDIA FILMS CRAFT, INC., AND NAVROZMEDIANETWORK, INC., Appellants**

**V.**

**SPARK WEALTH INVESTMENTS, LLC, Appellee**

---

**On Appeal from the 400th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 24-DCV-319828**

---

### CONCURRING OPINION TO
### DENIAL OF EN BANC RECONSIDERATION

With en banc rulings often leaving no guidance about what constitutes a conflict or extraordinary circumstances, this may be an apt moment to state why this writer sees neither.

I.

Start with plenary power. Did the panel have the power to alter its judgment, or was such power lacking? The answer ought to be apparent from one look at Rule of Appellate Procedure 19. That rule gives a court "plenary power over its judgment" until the running of a 30-day or 60-day clock (depending on the circumstances). TEX. R. APP. P. 19.1. Everybody agrees that the court acted before the clock ran out, so it follows that plenary power remains available and undiminished.

However, the appellee's motion for en banc reconsideration denies the existence of plenary power here, contending:

- "[T]he majority's decision exceeds its plenary power . . . ."

- "The panel has exceeded its plenary powers . . . ."

That position leaves me unconvinced. Perhaps the clash is less about power and more about the prudence of using it, but the further we move away from the yes-or-no issue of power, the more we move toward discretion and items over which reasonable minds may disagree—which weakens the case favoring en banc action. An en banc eyebrow might deservedly go up if a panel had changed a decision after its power to do so expired, but nothing like that happened here.

Be that as it may, given the suggestion that the panel went past its powers, the first order of business is to show that the panel had ample power. If Rule 19 does

not decide the matter immediately, the word "plenary" offers a good starting point.

Plenary comes from Latin and means exactly what one would expect. "Full, entire, complete, absolute, perfect, unqualified."[1] Plenary has had this basic meaning for as many centuries as English speakers have used the word.

## A.

Where did we get the idea of plenary power, and why did anybody ever care? Long ago, courts had terms and lost power over a judgment once the "term" ended,[2] and that tradition took root in Texas.[3] Our constitution presupposes that trial courts have terms: district courts "shall hold the regular terms at the County Seat of each County in the Court's district in such manner as may be prescribed by law. The Legislature shall have power by General or Special Laws to make such provisions

---

[1] *Plenary*, BLACK'S LAW DICTIONARY (4th ed. rev. 1968); *see also* Noah Webster, AN AMERICAN DICTIONARY OF THE ENGLISH LANGUAGE 751 (1848).

[2] *See, e.g.*, Kenneth Culp Davis, *Res Judicata in Administrative Law*, 25 TEX. L. REV. 199, 236 (1947) ("Courts from time immemorial have enjoyed a plenary power to modify their action during the term of court when the judgment or decree is rendered."); Note, *Federal Rule 60(b): Relief from Civil Judgments*, 61 YALE L.J. 76, 76 (1952) ("Traditionally, a court could reopen and modify judgments only during the term in which they were rendered.").

[3] *See Wood v. Wheeler*, 7 Tex. 13, 16 (1851) ("We do not conceive that in this action the court exceeded its just authority. The term had not expired, and the power of the court over its judgments rendered during the term had not been exhausted. Until the expiration of the term, the court had competent authority to amend, reverse, or annul its judgments . . . ."); *Chambers v. Hodges*, 3 Tex. 517, 528–29 (1848) ("[W]hen the judgment of the court is fully settled, its minutes entered and authenticated as a record, and the term is closed, the court has no further power over the decree for the purpose of revision or modification upon the merits . . . .").

3

concerning the terms or sessions of each District Court as it may deem necessary."

TEX. CONST. art. V, § 7(d); *see also id.* art. V, §§ 17, 29 (county court provisions).

A trial court's term mattered because its expiration generally coincided with loss of plenary power over a judgment.[4] That same concept applied on appeal, although appellate terms did not necessarily match trial court terms.[5] But whatever the dates of a term, the point remains that before the 1941 rules, the intermediate appellate courts would lose plenary power to change a judgment after the term's end. *See Cockburn v. Hightower*, 121 Tex. 555, 557, 52 S.W.2d 365, 366 (1932) (orig. proceeding) ("[T]he Court of Civil Appeals is without authority to correct or alter a judgment after the expiration of the term in which it was rendered.").

## B.

In 1986, Texas enacted a set of appellate rules. But they said literally nothing about plenary power, and they said close to nothing about court terms, with only a

---

[4] *See, e.g.*, *Wear v. McCallum*, 119 Tex. 473, 476, 33 S.W.2d 723, 724 (1930) ("[A] trial court has control over his judgments until they become final judgments by operation of law, either by the termination of the term of court at which they are entered or by other statutory provision . . . ."); *Ex parte Lohmuller*, 103 Tex. 474, 475, 129 S.W. 834, 834 (1910) ("The rule that judgments, after the expiration of the terms at which they are rendered, pass beyond the power of the court to set aside or alter them is well settled.").

[5] For example, under the revised statutes of 1911, the court of civil appeals term started on the first Monday in October and ran until the first Monday in the next July. *See* TEX. REV. CIV. STAT. art. 1585 (1911); *see also id.* art. 1518 (1911) (fixing term for Texas Supreme Court); *cf.* TEX. GOV'T CODE § 22.218 (current provision: "The term of each court of appeals begins and ends with each calendar year.").

short mention in a criminal rule. *See* TEX. R. APP. P. 234 (1986, repealed 1997) ("All cases filed in the Court of Criminal Appeals and not disposed of at the end of the term shall be automatically continued to the next succeeding term of said court.").

As the twentieth century progressed, terms of court faded further and further into insignificance, and a trial court's plenary power became more closely tethered to the date of the judgment instead of the time in the term. *See, e.g.*, TEX. R. CIV. P. 329b; Clarence A. Guittard, *Other Significant Changes in the Appellate Rules*, 12 ST. MARY'S L.J. 667, 668 (1981). Yet for all the fine-tuning to Rule 329b, nothing comparable existed in the 1986 appellate rules.

This gap was filled by the 1997 rules: "The new rules for the first time specifically define the plenary power courts of appeals retain after a judgment and opinion has been handed down." John Hill Cayce, Jr., Anne Gardner & Felicia Harris Kyle, *Civil Appeals in Texas: Practicing Under the New Rules of Appellate Procedure*, 49 BAYLOR L. REV. 867, 979 (1997). Rule 19 cut the cord between plenary power and the appellate court's term: "The expiration of the appellate court's term does not affect the court's plenary power or its jurisdiction over a case that is pending when the court's term expires." TEX. R. APP. P. 19.4. Plenary power now depends only on a 30-day or 60-day clock.

The preceding authorities confirm that the panel still retained plenary power over its judgment when it acted to reinstate the appeal. No other conclusion can

5

coexist with Rule 19.  With this background about why plenary power is undeniable, let us turn to the issue whether some other legal barrier bars its exercise—an issue that is said to present a conflict.

## C.

The en banc motion relies on several cases that predated Rule 19, most notably *B. D. Click Co. v. Safari Drilling Corp*., 638 S.W.2d 860 (Tex. 1982) (holding that absent motion that complied with old Rule of Civil Procedure 21c relating to seeking extension of time for filing transcript and statement of facts, appellate court had no authority to grant extension of time and appeal must be dismissed), and its progeny, such as *Nwora v. Commission for Lawyer Discipline*, 252 S.W.3d 417 (Tex. App.—Houston [1st Dist.] 1997, no writ) (per curiam).  Those cases, however, were decided under the prior rules.  They tell us nothing about the reach of Rule 19.  If anything, they tell us about an era that Texas courts have come to regard as too rigid.

*B.D. Click*'s author, Justice Barrow, left the supreme court to become a law school dean.  My most lasting memory of his appellate procedure class was his account of debating Justice Pope over how to decide *B.D. Click*.  Saying that their debates left "blood on the walls" inside the high court, he described the joy of relying on an article by Justice Pope,[6] while Justice Pope allegedly fought back with Barrow

---

[6]     *See* Jack Pope & Steve McConnico, *Practicing Law With the 1981 Texas Rules*, 32 BAYLOR L. REV. 457 (1980).

opinions. Whatever the details of how the ruling was hammered out, the world of *B.D. Click* was one that we learned to live with but never came to love.[7] That world was washed away by the 1997 flood, and I do not mourn its passing.

In recent years, courts have increasingly preferred to reach the merits. That well-known trend, which has occasionally gone further than my sensibilities would have preferred, needs no rehearsal. What may bear note, however, is the suggestion that even if plenary power exists here under Rule 19, its exercise faces a legal barrier. No such barrier is visible to me. Such a barrier once existed but has been removed.

This takes us to the en banc decision in *Humble Exploration Co. v. Browning*, 690 S.W.2d 321 (Tex. App.—Dallas 1985, writ ref'd n.r.e.), which acknowledged a "certain limited plenary authority," *id.* at 327, but saw that authority as cabined by old Rule 21c of the rules of civil procedure, which animated *B.D. Click*. The Dallas majority held that its "limited plenary" power ought not be exercised "in a manner contrary to the expressed rules." *Id.*

That may have been a respectable view, but Chief Justice Guittard dissented, on the equally respectable view that "[i]f the court retains until the end of the term

---

[7] Lawyers often had no choice but to chase down court reporters to sign affidavits so we could get an extension for the record every time the deadline approached. Judges too had to tolerate the regime's rigidity. *See Knight v. Sam Houston Mem'l Hosp.*, 907 S.W.2d 847, 850 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (Oliver-Parrott, C.J., concurring) ("I reluctantly agree that, under the current state of the law, this appeal must be dismissed. I write separately to express my opinion that the rules concerning filing the transcript are unjust and should be changed.").

the plenary power to act sua sponte, then the filing of an untimely motion cannot operate to limit that power." *Id.* at 331. "Application of the *Click* rule to the present situation would nullify the doctrine of plenary power and leave the appellate court with no power over its judgment after a motion for rehearing has been overruled or, in absence of a timely motion for rehearing, the time for filing such a motion has expired, notwithstanding the continuation of the court's term, which begins and ends with the calendar year." *Id.* at 332. Thus ended the era before the 1986 rules.

Whichever side of the *Humble Exploration* debate one wants to take about the better answer under the rules in force during the cold war, none of that matters today. Old Rule 21c was repealed when the 1986 appellate rules arrived, and the strict tenet that it spawned in *B.D. Click* is no more. That tenet has ceased to be. Bereft of life, it rests in peace. It is an ex-tenet.

As we all know, the 1986 rules later gave way to the 1997 appellate rules. During their gestation, the Supreme Court Advisory Committee met in 1995 to discuss creating a plenary power rule, in a discussion led by Chief Justice Guittard. He introduced the topic as follows: "The only provision in the appellate rules concerning plenary power is the rule concerning the court of—concerning expiration

of the term. There are no rules about plenary power."[8]  In an obvious reference to

*Humble Exploration*, Chief Justice Guittard continued:

> With respect to plenary power the conventional wisdom is that the plenary power extends only to the end of the term and then stops unless there is some other provision.
>
> Now, the appellate court terms are fixed by law on account of the basis. That doesn't make too much sense. The only case that I know about is one from the Dallas court in [an en banc] decision, in which I participated but d[iss]ented in some respects, where they said, "Oh, yes, the court has"—the majority said, "Oh, yes, the court has plenary power up to the end of the year, but we can't foresee any good place that that could—we can't really envision any occasion in which that might be appropriate.["]
>
> So if there is no real effect of having a plenary power to the end of the year, let's just cut it off where the court said that you should cut it off, and that is 45 days after the judgment if no motion for rehearing is filed and then and so on. So the idea is to provide—make a specific provision as to the extent of the plenary power where there was no plenary power before and to provide that the expiration of the term has no effect on the plenary power or on the court's authority to cite any matter pending before the court when the term expires.[9]

The committee voted to adopt the Guittard proposal, and in due course it took final

form as Rule 19 as part of the 1997 overhaul. The old scheme is completely gone.

---

[8]    Supreme Court Advisory Committee, Transcript from Committee Meeting Jan. 20, 1995 (Morning Session), 5219, 5287, *available at* https://www.txcourts.gov/All_Archived_Documents/SupremeCourtAdvisoryCommittee/Meetings/1995/transcripts/sc01201995a.pdf (last visited July 6, 2026).

[9]    *Id.* at 5287–88.

The new scheme, found in today's appellate rules, "effectively overrules *B.D. Click Co. v. Safari Drilling Corp*." Cayce, 49 BAYLOR L. REV. at 930 n.421.

So even if *Humble Exploration* was good law when decided in the mid-1980s, which we could debate but need not, the current rules work so differently as to have left that case entirely behind. We now live in an era where:

- Rule 19 expressly vests the appellate court with plenary power;
- No counterpart to old Rule 21c stands in the way of that power's exercise in a case such as this one; and
- A steady tailwind of supreme court jurisprudence favors reaching the merits when reasonably possible.

The confluence of all these factors persuades me that reinstating the appeal was not only permissible, but was in fact the better ruling, notwithstanding the legitimate concerns about finality of judgments and respect for deadlines.

## II.

With the preceding discussion in mind, the last question is whether anything in this appeal justifies en banc reconsideration. My answer is no. Had a different panel declined to reinstate the appeal, I might have disagreed but would not have voted to reconsider that decision en banc. By the same token, the fact that the panel reinstated it strikes me as equally unworthy of full court action.

This case has its own unique features, but they do not justify en banc action, and they surely do not justify it at this stage of the case. Of all the federal appeals that come to mind from my years in private practice, I recall only one occasion when

someone asked for en banc review prior to briefing; the Fifth Circuit clerk's office treated the motion as a non-starter and stated that it would not even be circulated but would sit in the file for the merits panel to peruse after the briefing.

Perhaps my view—that this appeal does not meet the en banc standard—is colored by my suspicion that if we left the outcome as a dismissal, especially with a split panel, we would face a substantial risk of summary reversal. Perhaps it is influenced by my history with the *B.D. Click* regime. Regardless, the case does not seem to present a cognizable conflict or extraordinary circumstances.

First, there is no conflict with a prior decision from this Court. The motion alleges a conflict with *B.D. Click* and *Nwora*, but the former is not a decision from this Court, and both cases hail from an era when the rules were different. While the motion lists other cases that do come from this Court, those establish at most that dismissal for failure to pay a filing fee is a permissible outcome, not that plenary power becomes blocked to the point of becoming illusory. They do not address whether the Court may exercise its plenary power to reinstate a case where the appellant failed to pay a $205 filing fee, apparently due to a lawyer mix-up, but paid multiples more ($1,447) for the clerk's record.

Again, if a different panel had dismissed the appeal, I would have respected that ruling and voted against en banc reconsideration, because a litigant in this

posture has no right to reinstatement. But the lack of a right on the part of a litigant does not create an affirmative barrier against judicial power.

Second, there are no extraordinary circumstances. Although one always has to ask about creating a slippery slope problem, that strikes me as not a serious risk. Situations like this do not come up often; I do not recall ever seeing a case where someone paid a much larger fee for the record but missed a smaller filing fee. Litigants surely cannot count on relief in such cases, so the likelihood of encouraging bad behavior would seem very slim.

For these reasons, the panel ruling strikes me as plainly a permissible course, almost certainly the correct course, and in any event not the stuff of full court review. Although judgment calls like these do often result in differing opinions, perhaps the preceding comments will help the bar in evaluating the debate.



David Gunn
Justice

En Banc Court consists of Chief Justice Adams and Justices Rivas-Molloy, Guerra, Gunn, Caughey, Guiney, Morgan, Johnson, and Dokupil.

Justice Gunn, joined by Justices Rivas-Molloy, Guerra, Caughey, Guiney, and Johnson, concurring in the denial of en banc reconsideration.

Justice Johnson, joined by Justices Rivas-Molloy, Gunn, Caughey, and Guiney, concurring in the denial of en banc reconsideration.

Chief Justice Adams, joined by Justices Morgan and Dokupil, dissenting to the denial of en banc reconsideration.

Justice Morgan, joined by Chief Justice Adams and Justice Dokupil, dissenting to the denial of en banc reconsideration.